IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-HC-2157-BO

| | | |
|---|---|---|
| JOHN BLACK, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| TRACY JOHNS, | ) | |
|     Respondent. | ) | |

John Black, through counsel, petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter is before the court on respondent's motion to dismiss. Mot. to Dismiss [D.E. 16]. Petitioner responded, and respondent replied. Resp. [D.E. 24] and Resp. [D.E. 27]. In this posture the matter is ripe for determination.

Issues

Petitioner challenges a parole revocation proceeding, asserting due process violations by the United States Parole Commission (hereinafter "Commission") for: (1) failing to follow its own post-hearing procedures in rendering its final decision, and (2) failing to set forth adequate reasoning in its Notices of Action ("NOA") as to why the hearing examiner's recommendation was inadequate in light of all the mitigating evidence, contrary to its enabling statute and implementing regulations. Pet. 3. In so doing, petitioner asserts the Commission arbitrarily, capriciously, and irrationally increased his sentence by ten years when he was already incarcerated for a period more than twice his recommended guideline range. Id.

Background

John Black (hereinafter "Black" or "petitioner") was born on April 27, 1939, in an impoverished rural area on Johns Island, Charleston, South Carolina. Pet. 3. He is one of nine children. Id. When he was seven years old, Black's parents separated, and his father abandoned his duties to contribute to the support of his family. Id. Black was raised by his mother and grandparents. Id. When he was seventeen years old, his family moved to Brooklyn, New York, and later to Chicago, Illinois. Id. Eventually, Black's mother returned to South Carolina. Id.

One presentence investigator described his home environment as "inadequate" and "marred by extreme economic and emotional deprivation." Pet., Exhibit B. Black quit school as a youth in order to find work. Pet. 3. He studied for his GED but failed the examination four times. Id. He has tested in the borderline range of intelligence. Id.

Black struggled in the past with a serious addiction to crack cocaine. Id. at 4. At the time of his 1993 violation conduct, he was using crack cocaine every day. Id. Black began using drugs in 1980, but he has not used drugs for over eighteen years. Id. He has participated in a number of drug programs, completing Narcotics Anonymous, Alcoholics Anonymous, and Sober Living. Id. All drug tests have been negative. Id. Even though he has been drug-free for over eighteen years, Black continues to participate in drug programs in prison. Id. Most recently, he completed twelve hours of drug training at FCI-Butner, earning a certificate of achievement. Pet., 4 and Exhibit E. Black is now 74 years of age and is in poor health. Pet. at 2.

On March 12, 1982, the U.S. District Court for the Eastern District of Virginia sentenced petitioner to 25 years in prison for armed bank robbery. Mem. in Supp. of Mot. to Dismiss, Exhibit A. Petitioner's sentence included a term of parole. Id. On March 4, 1991, petitioner

2

was released to parole supervision, which was to expire on December 3, 2006. Id., Exhibit B. On March 19, 1993, the Commission issued a warrant to return him to custody. Id. Exhibit C.

Thereafter petitioner was convicted of multiple criminal offenses in the Circuit Court for the City of Alexandria, Virginia and served approximately seventeen years on these convictions. On July 22, 2010, petitioner was released from the custody of the Commonwealth of Virginia when he was granted geriatric parole. Pet., Exhibit T. Black was released to the U.S. Marshal, Eastern District of Virginia, on the Commission's 1993 detainer warrant and returned to federal custody to face parole revocation proceedings from the 1993 infractions. Id., Exhibit I and J.

After five months, Black was granted a hearing.[1] On December 15, 2010, Joseph Pacholski, a United States Parole Commission hearing examiner conducted the hearing. Pet., 6. At the conclusion of the hearing, Examiner Pacholski recommended that petitioner be granted parole after the service of 212 months or a release date of March 22, 2011. Id. This recommendation was based upon the fact that petitioner had already served well above the reparole guidelines ("our subject has served double the guidelines at today's juncture"), was incident-free for over 18 years while serving the state sentence, and based upon petitioner's age, which the examiner concluded reduced his ability to commit further crimes. Id. 6-7.

At this point, what occurred is difficult to understand. It appears that Mr. Pacholski signed an order on December 15, 2010, recommending reparole to commence on March 22, 2011. On January 18, 2011, it appears the case was reviewed by a second hearing examiner, Lynne Jenkins, to obtain a "panel" of hearing examiners before forwarding the summary of the

---

[1] While the hearing requirements are that the hearing must occur within 90 days pursuant to 18 U.S.C. § 4214(c), petitioner raises no issue as to this delay.

3

hearing and a recommended decision to the Commission. See 28 C.F.R. § 2.23(b). Petitioner asserts she agreed with Pacholski that he should be reparoled. Pet. at 7.

Respondent contends that Pacholski prepared and signed three alternative orders: an order to revoke parole, a second order to credit none of the time petitioner had spent on parole, and the third order to grant petitioner parole on March 22, 2011. Respondent also asserts that Lynn Jenkins signed all three orders. Mem. in Supp. Mot. to Dismiss. On January 19, 2011, the case was reviewed by the Commission Vice Chairman Cranston Mitchell, whose signature appears on all three orders as well. On February 10, 2011, Commissioner Patricia Cushwa also signed the three alternative orders. On February 11, 2011, Commissioner J. Patricia Smoot signed two of the three orders: the order to revoke parole and the order to continue to expiration. On February 14, 2011, the Commission issued a notice of action agreeing with the recommendation of the hearing examiner panel to grant parole. Pet., Exhibit I. Thereafter, on March 3, 3011, the Commission issued a second notice of action revoking parole. Pet., Exhibit J.

On June 30, 2011, Petitioner submitted an appeal of the Commission's decision to the Commission's administrative appeals section, the National Appeals Board, or "NAB." Pet., Exhibit S. The NAB affirmed the Commission's decision to revoke parole. Id., Exhibit A.

On November 14, 2011, a Commission hearing examiner conducted an interim hearing for petitioner pursuant to 18 U.S.C. § 4208(h). Mem. in Supp. Mot. to Dismiss, Exhibit M, summary of the hearing. By notice of action dated December 21, 2012, the Commission ordered no change in the decision to continue parole to expiration. Id. Exhibit N.

4

Discussion

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50.

In order for a writ of habeas corpus to issue pursuant to 28 U.S.C. § 2241, a petitioner must show that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C § 2241(c)(3). "[T]he privilege of habeas corpus entitles the prisoner to a opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." Boumediene v. Bush, 553 U.S. 723, 128 S. Ct. 2229, 2266 (2008) (citing INS v. St. Cyr, 533 U.S. 289, 302 (2001)).

A district court's review of the Commission's actions in a habeas proceedings is limited to determining if the Commission abused its discretion and violated a parolee's rights under the Constitution, a federal law or federal regulation, but a court may not review the Commission's

5

discretionary decisions. Garcia v. Neagle, 660 F.2d 983, 987-89 (4th Cir. 1981). Due process protections are afforded to the revocation of parole process. Morrissey v. Brewer, 408 U.S. 471 (1972); see also Young v. Harper, 520 U.S. 143 (1997). A parolee is entitled to minimum constitutional due process which requires reasonably prompt informal inquiry conducted by an impartial hearing officer to determine if there is reasonable ground to believe that the arrested parolee has violated parole condition. Id. at 486-487. Thereafter at the revocation hearing, a parolee is entitled to:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489.

Likewise, the requirements of 28 C.F.R. §§ 2.23(a)-(d), 2.24(a), and Notes and Procedures §§ 2.23-01(b) and 2.24-02 codified Black's liberty interest. Among other things, the regulations state that when the Commissioners render a different decision than the hearing examiner recommends a memorandum explaining the reasons for the Commissioner's disagreement must be provided and incorporated into the NOA.

Additionally, the Court of Appeals for the Fourth Circuit has held that federal courts have the power to review "allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." Garcia, 660 F.2d at 988 (citations omitted). Thus, "[w]here the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency

6

has violated constitutional, statutory, regulatory or other restrictions . . . ." Id. (citations omitted). This is because "[a]n agency is required to comply with its regulations that are congruent with the requirements of constitutional due process." Detweiler v. Va. Dep't of Rehab. Serv., 705 F.2d 557, 561 (4th Cir. 1983) (citing United States v. Caceres, 440 U.S. 741, 749 (1979)). The Commission's failure to follow its own required procedures may rise to the level of violating one's due process rights. See INS v. Yang, 519 U.S. 26, 32 (1996); Furnari v. Warden, 218 F.3d 250, 257-58 (3d Cir. 2000) ("An agency abuses its discretion if it fails to follow its own regulations and procedures.") (quoting Moret v. Karn, 746 F.2d 989, 992 (3d Cir. 1984)); see also Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988) (citations omitted) ("[P]rinciples of due process require an agency to follow its own regulations, which have the force of law.").

Petitioner asserts multiple failings by the Commission in following their own procedures and those required by due process. Furthermore, respondent agrees that errors were made, but asserts, without affidavits of the Commissioners, that the errors were rectified and now comport with due process.

In light of the ambiguities in the record, dismissal of the action under Rule 12 is not appropriate. Furthermore, Rule 7 of the Rules Governing § 2254 Cases allows for a party in a habeas case to expand the record with "additional materials relating to the petition" as long as "the party against whom the additional materials are offered" is given "an opportunity to admit or deny their correctness." A court may apply this rule to § 2241 cases as well. Rule 1(b) of the Rules Governing § 2254 Cases; see also Ortloff v. Fleming, 88 F. App'x 715, 717 (5th Cir. 2004) (per curiam) (unpublished) (applying Rule 6 of the Rules Governing § 2254 to a § 2241 case); Aguayo v. Harvey, 476 F.3d 971, 976 (D.C. Cir. 2007) (applying Rule 7 to a § 2241 case).

7

Therefore, respondent is DIRECTED to expand the record to include further documentation of their defense, such as affidavits from the Commissioners establishing the facts upon which respondent rests his arguments. Respondent has until October 7, 2013, to file a motion for summary judgment with additional materials including the above mentioned affidavits. Petitioner has until October 21, 2013, to reply. A hearing shall thereafter be set, to hear arguments regarding the same. At the hearing the parties shall be prepared to clarify their positions with respect to the remedies available to petitioner on a writ of habeas corpus.

Accordingly, the motion to dismiss [D.E. 16] is DENIED, and respondent is DIRECTED to expand the record as set out above. Likewise, a hearing shall be set to further brief the court.

SO ORDERED, this 17 day of September 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8